1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11   LEMBERG LAW, LLC,                    Case No.:  16cv1727 JM(WVG)

12                          Plaintiff,
                                         **ORDER DENYING PLAINTIFF'S**
13   v.                                   **MOTION TO STAY PROCEEDINGS**
                                         **AND COMPEL ARBITRATION**
14   TAMMY HUSSIN, individually; LAW
     OFFICE OF TAMMY HUSSIN, P.C.,
15
                           Defendants.
16

17

18       Plaintiff Lemberg Law, LLC, ("Lemberg") moves the court, pursuant to the

19   Federal Arbitration Act, 9 U.S.C. § 1 et seq., to stay proceedings in this action and

20   compel arbitration.  (Doc. No. 108.)  For the reasons set forth below, the court denies

21   Plaintiff's motion.

22                               **BACKGROUND**

23       On May 15, 2015, Lemberg filed a complaint in the District of Connecticut against

24   Defendants Tammy Hussin and the Law Office of Tammy Hussin, P.C., d/b/a Hussin

25   Law ("Hussin").  (Doc. No. 1.)  Lemberg's complaint asserts claims of (1) breach of

26   contract, (2) conversion, (3) violation of Connecticut's Unfair Trade Practices Act

27   ("CUTPA"), (4) statutory theft, (5) violation of the Connecticut Uniform Trade Secrets

28   Act ("CUTSA"), (6) violation of Connecticut General Statute section 53a-251, (7) theft

1

1   of corporate opportunities, and for (8) quantum meruit and (9) unjust enrichment.

2        According to the complaint, Hussin served as a contract attorney for Lemberg

3   before establishing her own firm in February 2014.  Upon Hussin's decision to open her

4   own firm, Hussin and Lemberg negotiated a separation agreement in which Lemberg

5   agreed to continue paying Hussin for cases that settled prior to her separation from the

6   firm, and Hussin agreed "to continue prosecuting under the Lemberg Law name

7   California federal cases filed by her for Lemberg Law clients."  Lemberg was to collect

8   forty percent of the fees generated from those cases, and Hussin was permitted to use

9   Lemberg's computer system for her California cases.  Lemberg alleges that Hussin

10   abandoned cases, improperly retained fees, improperly accessed Lemberg's computer

11   system, and marketed herself to Lemberg's current and former clients.  Nowhere in the

12   complaint does Lemberg mention an agreement to arbitrate between the parties.

13        On January 7, 2016, Hussin filed a second amended answer.  (Doc. No. 48.)  In the

14   second amended answer, Hussin asserts three affirmative defenses: (1) that Lemberg

15   materially breached the separation agreement, (2) that Lemberg has unclean hands, and

16   (3) that Lemberg seeks to enforce an unenforceable contract that calls for an illegal fee

17   division.  Hussin also asserts counterclaims of (1) breach of contract, (2) violation of

18   CUTPA, (3) conversion, (4) statutory theft, (5) quantum meruit, (6) unjust enrichment,

19   and (7) abuse of process.  Hussin alleges, among other things, that Lemberg withheld fees

20   to which Hussin was entitled or paid her reduced fees, deducted unjustified costs from

21   settlement awards, affixed her signature to settlement agreements without her consent,

22   filed complaints on behalf of individuals who never agreed to be represented by Lemberg

23   or Hussin, and wrongfully used Hussin's name to advertise Lemberg to California clients.

24   Hussin also states that Lemberg authorized her to access Lemberg's computer systems to

25   transfer her files from Lemberg's database.

26        Nearly one year after Lemberg filed the complaint, on Hussin's motion, the

27   District of Connecticut transferred the case to the Southern District of California pursuant

28   to 28 U.S.C. § 1404(a).  (Doc. No. 97.)  The court later affirmed its decision to transfer

16cv1727 JM(WVG)

1  over Lemberg's motion for reconsideration.  (Doc. No. 121.)

2      The docket indicates extensive litigation by both parties.  For example, Lemberg,

3  in addition to filing the initial complaint, has filed (1) multiple motions to extend time to

4  respond to Hussin's interrogatories, (Doc. Nos. 28, 50); (2) a motion to extend time to

5  respond to Hussin's counterclaims and amended answer, (Doc. No. 36); a motion to

6  strike and dismiss portions of Hussin's amended answer and counterclaims, (Doc. No.

7  42); a motion to dismiss and strike Hussin's second amended answer, affirmative

8  defenses, and counterclaims, (Doc. No. 57); a motion to seal, (Doc. No. 59), and a motion

9  to amend that motion, (Doc. No. 61); a motion to compel discovery responses and for

10  sanctions, (Doc. No. 62); a joint motion to extend discovery deadlines, (Doc. No. 69); a

11  motion for status conference, (Doc. No. 75); a motion to extend time for the disclosure of

12  an expert report, (Doc. No. 79); a motion for reconsideration of the order transferring the

13  case to the Southern District of California, (Doc. No. 100); and the motion to stay

14  proceedings and compel arbitration now before the court, (Doc. No. 108).

15      In its motion, Lemberg asks the court to stay the proceedings and compel

16  arbitration based on an October 2013 memorandum of understanding between the parties,

17  which provided that "[a]ny controversy or claim arising out of or relating to this

18  agreement shall be settled by Mark Dubois."  (Doc. No. 110-1 at 4.)

**DISCUSSION**

19

20  **A.      Legal Standards**

21      The Federal Arbitration Act ("FAA") applies to arbitration provisions found in

22  written agreements that evidence a transaction involving commerce.  9 U.S.C. § 2.  An

23  agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as

24  exist at law or in equity for the revocation of any contract."  Id.  Federal policy favors

25  arbitration, and arbitration agreements may not be placed in a disfavored position relative

26  to other contracts.  See Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1170 (9th Cir.

27  2003).  The court must grant a motion to compel arbitration if (1) a valid agreement to

28  arbitrate exists, and (2) the dispute at issue falls within the scope of that agreement.  See

3

1  Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

2  Arbitration agreements are subject to general contract defenses, however.  Ingle, 328 F.3d

3  at 1170.  One such defense is waiver.  United States v. Park Place Associates, Ltd., 563

4  F.3d 907, 921 (9th Cir. 2009).

5  **B.  A Valid Agreement to Arbitrate Likely Exists.**

6  First, the court must determine whether Lemberg and Hussin agreed to an

7  enforceable arbitration clause.[1]  This question is for the court, not an arbitrator, to decide.

8  Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002); Bridge Fund Capital

9  Corp. v. Fastbucks Franchise Corp., 622 F.3d 996, 1000 (9th Cir. 2010).  "To interpret

10  the parties' contract, a court should look to 'general state-law principles of contract

11  interpretation, while giving due regard to the federal policy in favor of arbitration by

12  resolving ambiguities as to the scope of arbitration in favor of arbitration.'"  Boardman v.

13  Pac. Seafood Grp., 822 F.3d 1011, 1018 (9th Cir. 2016) (quoting Wagner v. Stratton

14  Oakmont, Inc., 83 F.3d 1046, 1049 (9th Cir. 1996)).[2]

16  [1] It is inconsequential that neither Lemberg nor Hussin signed the purported arbitration clause.  "While the FAA requires a writing, it does not require that the writing be signed by the parties."  Nghiem v. NEC Elec., Inc., 25 F.3d 1437, 1439 (9th Cir. 1994).

19  [2] At this point, it is unclear whether Connecticut or California law applies to the parties' agreement as a whole, and to interpreting the arbitration clause in particular.  Following transfers for convenience under 28 U.S.C. § 1404(a), the transferee court in a diversity case must apply the law of the state in which the action was originally filed.  Van Dusen v. Barrack, 376 U.S. 612, 639 (1964).  That does not mean the law of the transferor state will always apply, however, because in a diversity case, part of the state law that would have been applied is the choice of law rules of the forum state, Klaxon Company v. Stentor Electric Manufacturing Company, Inc., 313 U.S. 487, 496 (1941), and that state's choice of law rules may call for application of the law of the transferee state or some third state.  Under Connecticut choice of law rules for claims "that sound in tort, namely, civil conspiracy, unjust enrichment and CUTPA, [courts] apply the law of the state in which the plaintiff was injured, unless to do so would produce an arbitrary or irrational result."  Macomber v. Travelers Prop. & Cas. Corp., 277 Conn. 617, 640 (2006).  For contract claims, Connecticut courts employ "the 'significant relationship' test, and presume the application of the law of the state in which the bulk of the

4

1    Under California law, the agreement need not use the word "arbitration." Cheng-

2  Canindin v. Renaissance Hotel Associates, 50 Cal. App. 4th 676, 691 (1996).  But "a

3  dispute resolution procedure is not an arbitration unless there is a third party decision

4  maker, a final and binding decision, and a mechanism to assure a minimum level of

5  impartiality with respect to the rendering of that decision." Id. at 687-88; but see Wolsey,

6  Ltd. v. Foodmaker, Inc., 144 F.3d 1205, 1209 (9th Cir. 1998) ("[A]rbitration need not be

7  binding in order to fall within the scope of the Federal Arbitration Act.").  The definition

8  of arbitration is nearly identical under Connecticut law.  There, arbitration is "the

9  voluntary submission of an existing or future dispute to a disinterested person or persons

10 for final determination." Harry Skolnick & Sons v. Heyman, 7 Conn. App. 175, 179

11 (1986).  "An agreement to arbitrate is not required to be stated in any particular form or

12 wording, and the use of technical or formal words is not required." Id. at 178 (stating that

13 it is "not determinative that the agreement does not use the term 'arbitration'").  Rather,

14 the intent of the parties controls. Id. at 179.

15    Here, the agreement provides that "[a]ny controversy or claim arising out of or

16 relating to this agreement shall be settled by Mark Dubois."  While neither party provided

17 any information regarding the impartiality, background, or qualifications of Mr. Dubois,

18 or stated whether his decision would be final, the parties, by designating an agreed-upon

19 third party to "settle[]" their dispute, likely drafted a valid agreement to arbitrate. See

20 Wasyl, Inc. v. First Boston Corp., 813 F.2d 1579, 1580-82 (9th Cir. 1987) (holding valid

21 arbitration clause existed under California law where agreement called for certain

22

23    ─────────────────

24 transaction took place." Id.  Based on the parties' pleadings, the agreement at issue
   concerned conduct that occurred at least in part in California.  It is therefore debatable

25 whether Connecticut or California law applies to the common law claims in this case.
   However, because California and Connecticut provide similar rules for interpreting

26 arbitration agreements and the court ultimately finds that Lemberg waived its right to

27 arbitration, the court need not decide which state's law governs the interpretation of the
   arbitration clause.

28

16cv1727 JM(WVG)

1    disputes to be decided "by three independent appraisers" despite the fact that the clause

2    did not use the word "arbitration").  Regardless, because, as discussed below, the court

3    finds that Plaintiff waived any right it had to arbitration, the court does not ultimately

4    resolve this question.

5              **C.      The Dispute at Issue Likely Falls Within the Scope of the Agreement.**

6              Next, the court must determine whether the arbitration provision covers the issues

7    in question.  This question is also for the court to decide, Howsam, 537 U.S. at 84, and

8    calls for the application of federal law, Brennan v. Opus Bank, 796 F.3d 1125, 1129 (9th

9    Cir. 2015) (holding federal law governs arbitrability where FAA covers agreement and

10   parties have not clearly and unmistakably designated that nonfederal arbitrability law

11   applies).[3]  The court finds that the arbitration provision, if valid, does cover the instant

12   dispute.  Lemberg and Hussin delegated to Mr. Dubois the responsibility to decide "[a]ny

13   controversy or claim arising out of or relating to" the agreement.  The United States

14   Supreme Court has held that this exact language constitutes a "broad arbitration clause . .

15   . ." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 398 (1967).

16   Likewise, the Ninth Circuit has noted that "when parties intend to include a broad

17   arbitration provision, they provide for arbitration 'arising out of or relating to' the

18   agreement." Cape Flattery Ltd. v. Titan Mar., LLC, 647 F.3d 914, 922 (9th Cir. 2011)

19   (quoting Mediterranean Enterprises, Inc. v. Ssangyong Corp., 708 F.2d 1458, 1464 (9th

20   Cir. 1983)); see also Collins & Aikman Prod. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 20 (2d

21   Cir. 1995) ("The clause in this case, submitting to arbitration '[a]ny claim or controversy

22   arising out of or relating to th[e] agreement,' is the paradigm of a broad clause."); Simula,

23   Inc. v. Autoliv, Inc., 175 F.3d 716, 720-21 (9th Cir.1999) (broadly interpreting even the

24

25   _____

26   [3] In applying federal law, the court follows the circuit in which it sits rather than
     the transferring circuit.  Newton v. Thomason, 22 F.3d 1455, 1460 (9th Cir. 1994);

27   Hartline v. Sheet Metal Workers' Nat'l. Pension Fund, 201 F. Supp. 2d 1, 3-4 (D.D.C.
     1999) (citing In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1173-76

28   (D.C. Cir. 1987), aff'd sub nom. Chan v. Korean Air Lines, Ltd., 490 U.S. 122 (1989)).

16cv1727 JM(WVG)

1  phrase "arising in connection with" in an arbitration agreement).

2       While Hussin argues that the agreement addressed how the parties intended to

3  continue, rather than end, their working relationship, the issues that have arisen are a

4  result of the breakdown of that relationship, and therefore are presumably within the

5  scope of the agreement.  Given that "any doubts concerning the scope of arbitrable issues

6  should be resolved in favor of arbitration," Moses H. Cone Mem'l Hosp. v. Mercury

7  Constr. Corp., 460 U.S. 1, 24-25 (1983), the court finds that the arbitration agreement

8  would control the claims in this case.

9       **D.**     **By Undertaking Extensive Federal Litigation, Plaintiff Waived Any**

10             **Right to Arbitration.**

11      **1.**     **The Court Decides the Question of Waiver.**

12      The Ninth Circuit recently made clear that "the question whether a party waived its

13 right to arbitrate on the basis of its litigation conduct . . . is presumptively for a court and

14 not an arbitrator to decide."  Martin v. Yasuda, No. 15-55696, 2016 WL 3924381, at *4

15 (9th Cir. July 21, 2016).  In so doing, the court looks to the FAA rather than state law.

16 Sovak v. Chugai Pharm. Co., 280 F.3d 1266, 1270 (9th Cir.), opinion amended on denial

17 of reh'g, 289 F.3d 615 (9th Cir. 2002).

18      **2.**     **Standards for Waiver Under the FAA.**

19      As the party arguing for waiver of the right to arbitrate, Hussin bears a "heavy

20 burden of proof."  Britton v. Co-op Banking Group, 916 F.2d 1405, 1412 (9th Cir. 1990).

21 The court must determine whether Lemberg waived its right to arbitrate "in light of the

22 strong federal policy favoring enforcement of arbitration agreements."  Fisher v. A.G.

23 Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir. 1986).  "[W]hether the problem at hand

24 is . . . an allegation of waiver, delay, or a like defense to arbitrability," the court must

25 resolve any doubts in favor of arbitration.  Moses H. Cone, 460 U.S. at 24-25.  To prove

26 waiver, Hussin "must demonstrate: (1) knowledge of an existing right to compel

27 arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party

28 opposing arbitration resulting from such inconsistent acts."  Fisher, 791 F.2d at 694 (9th

1   Cir. 1986).

2          The Ninth Circuit and courts within it have determined that parties took acts

3   inconsistent with their right to arbitrate when they filed a complaint requesting a jury

4   trial, e.g., United Computer Sys., Inc. v. AT & T Corp., 298 F.3d 756, 765 (9th Cir.

5   2002), or injunctive relief, Riverside Publ'g Co. v. Mercer Publ'g LLC, 829 F. Supp. 2d

6   1017, 1020-21 (W.D. Wash. 2011) (noting that party may have right to seek injunctive

7   relief from a court in aid of arbitration, for example to preserve the status quo pending

8   arbitration, but not where party does not acknowledge arbitrability of its claims and

9   instead requests actual damages and demands trial); see also Kelly v. Pub. Util. Dist.

10  No. 2, 552 F. App'x. 663, 664 (9th Cir. 2014) (finding party took inconsistent acts where

11  it "conducted discovery and litigated motions, including a preliminary injunction and a

12  motion to dismiss").  The Ninth Circuit recently noted that while there "is no concrete

13  test to determine whether a party has engaged in acts that are inconsistent with its right to

14  arbitrate[,] . . . a party's extended silence and delay in moving for arbitration may

15  indicate a 'conscious decision to continue to seek judicial judgment on the merits of the

16  arbitrable claims,' which would be inconsistent with a right to arbitrate."  Martin, 2016

17  WL 3924381, at *5 (quoting Van Ness Townhouses v. Mar Industries Corp., 862 F.2d

18  754, 759 (9th Cir. 1988)).

19         In Martin, the court held that the defendants engaged in conduct inconsistent with

20  their right to arbitrate by spending seventeen months litigating the case, including filing a

21  motion to dismiss on a key merits issue, entering into a protective order, answering

22  discovery, and preparing for and conducting a deposition.  Id. at *6.  The court also

23  pointed out that the "defendants did not even note their right to arbitration until almost a

24  year into the litigation . . . ."  Id.  Regarding the question of prejudice, the Martin court

25  noted that "litigation conduct inconsistent with a right to arbitrate most frequently causes

26  prejudice to the opposing party, [but] the link is not automatic."  Id.  Rather, parties must

27  show that, as a result of the opposing party's delay in seeking arbitration, they "incurred

28  costs they would not otherwise have incurred," "would be forced to relitigate an issue on

1    the merits on which they have already prevailed in court, or that the [opposing party has]

2    received an advantage from litigating in federal court that [it] would not have received in

3    arbitration." <u>Id.</u>

4       In holding that the plaintiffs were prejudiced by the defendants belated decision to

5    seek arbitration, the court put it plainly: "When a party has expended considerable time

6    and money due to the opposing party's failure to timely move for arbitration and is then

7    deprived of the benefits for which it has paid by a belated motion to compel, the party is

8    indeed prejudiced." <u>Id.</u> at *7; <u>see also</u> <u>Van Ness Townhouses</u>, 862 F.2d at 759

9    (determining party waived its right to arbitration because appellants were prejudiced

10    when party chose "to litigate actively the entire matter—including pleadings, motions,

11    and approving a pre-trial conference order—and did not move to compel arbitration until

12    more than two years after the appellants brought the action").

13       As a sophisticated party to the extensively negotiated agreement containing the

14    purported arbitration provision, Lemberg was no doubt aware of the provision and its

15    right to seek arbitration of its dispute with Hussin.  Yet Lemberg instead chose to file suit

16    in federal court.  Then, rather than quickly reversing course and seeking to enforce its

17    arbitration rights, Lemberg litigated the case for over a year before moving to stay

18    proceedings and compel arbitration.  That litigation included motions to extend time, to

19    strike, to dismiss, to seal, to amend, to compel discovery, for a status conference, for

20    sanctions, and for reconsideration.  By being required to litigate in response to these acts

21    that are inconsistent with a right to arbitrate, Hussin suffered prejudice.  Hussin has spent

22    considerable time litigating this matter and has been subjected to expense, delay, and

23    hassle.  Allowing Lemberg to compel arbitration at this late stage would only compound

24    that prejudice.  Accordingly, the court declines to send this case to arbitration.

25    ///

26    ///

27    ///

28    ///

16cv1727 JM(WVG)

1

**CONCLUSION**

2          For the foregoing reasons, the court denies plaintiff's motion to stay the

3    proceedings and compel arbitration.

4          IT IS SO ORDERED.

5    DATED:  September 26, 2016

6                                                    JEFFREY T. MILLER
                                                     United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16cv1727 JM(WVG)