UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEMBERG LAW, LLC,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>TAMMY HUSSIN, INDIVIDUALLY;<br>LAW OFFICE OF TAMMY HUSSIN,<br>P.C.,<br><br>　　　　　　　　　Defendants. | Case No.: 16cv1727 JM (WVG)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO STRIKE AND DISMISS PORTIONS OF DEFENDANT'S SECOND AMENDED ANSWER** |

      Plaintiff Lemberg Law, LLC, ("Plaintiff" or "Lemberg") moves the court to strike and dismiss portions of the second amended answer, affirmative defenses, and counterclaims of Defendants Tammy Hussin and the Law Office of Tammy Hussin P.C. d/b/a Hussin Law ("Defendants" or "Hussin") under Federal Rule of Civil Procedure 12. (Doc. No. 57.) For the reasons set forth below, the court grants in part and denies in part Plaintiff's motion.

## BACKGROUND

      Lemberg filed a complaint against Defendants in the District of Connecticut on May 15, 2015. (Doc. No. 1.) The complaint asserts (1) breach of contract, (2) conversion, (3) violation of Connecticut's Unfair Trade Practices Act ("CUTPA"), (4) violation of Connecticut General Statute section 52-564 for statutory theft, (5) violation

1

of Connecticut's Uniform Trade Secrets Act ("CUTSA"), (6) violation of Connecticut General Statute section 53a-251 for computer crimes, (7) theft of corporate opportunities, (8) quantum meruit, and (9) unjust enrichment.

On January 7, 2016, Hussin filed a second amended answer. (Doc. No. 48.) In the second amended answer, Hussin asserts three affirmative defenses: (1) material breach, (2) unclean hands, and (3) unenforceability of the contract at issue. Hussin also alleges counterclaims of (1) breach of contract, (2) violation of CUTPA, (3) conversion, (4) statutory theft under Connecticut law, (5) quantum meruit, (6) unjust enrichment, and (7) abuse of process.

Lemberg alleges that Hussin served as a contract attorney for Lemberg before establishing her own firm in February 2014. Upon Hussin's decision to open her own firm, Hussin and Lemberg negotiated a separation agreement in which Lemberg agreed to continue paying Hussin for cases that settled prior to her separation from the firm, and Hussin agreed to continue prosecuting cases filed by her for Lemberg's clients. Lemberg was to collect forty percent of the fees generated from those cases, and Hussin was permitted to use Lemberg's computer system for her California cases. Lemberg alleges that Hussin abandoned several of her cases and retained fees for herself rather than allocating them as required by the separation agreement, improperly accessed Lemberg's computer system, and marketed herself to Lemberg's current and former clients.

In response, Hussin alleges that Lemberg withheld fees to which she was entitled or paid her reduced fees, deducted unjustified costs from settlement awards, affixed her signature to settlement agreements without her consent, filed complaints on behalf of individuals who never agreed to be represented by Lemberg or Hussin, and wrongfully used Hussin's name to advertise Lemberg to California clients. Hussin also states that Lemberg authorized her to access Lemberg's computer systems to transfer her files from Lemberg's database.

On Hussin's motion, the District of Connecticut transferred the case to the Southern District of California pursuant to 28 U.S.C. § 1404(a), (Doc. No. 97,) affirming

its decision over Lemberg's motion for reconsideration, (Doc. No. 121). In the motion now before the court, originally filed in the District of Connecticut, Lemberg asks the court to strike portions of the second amended answer under Federal Rule of Civil Procedure 12(f) and dismiss other portions under Rules 12(b)(1) and 12(b)(6).[1]

## DISCUSSION

### A. Motion to Strike Under Rule 12(f)

Lemberg moves to strike, pursuant to Rule 12(f), paragraphs 91–99, 111–113, 123, and 178 of Hussin's second amended answer.

#### 1. Legal Standards

Federal Rule of Civil Procedure 12(f) states that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (internal quotations omitted). "'Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic.'" Varrasso v. Barksdale, No. 13-CV-1982-BAS-JLB, 2016 WL 1375594, at *1 (S.D. Cal. Apr. 5, 2016) (quoting Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003)). "The motion should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation. If there is any doubt the court should deny the motion." Obesity

---

[1] In deciding Lemberg's motions under the Federal Rules of Civil Procedure, the court follows the circuit in which it sits rather than the transferring circuit. Newton v. Thomason, 22 F.3d 1455, 1460 (9th Cir. 1994); Hartline v. Sheet Metal Workers' Nat'l. Pension Fund, 201 F. Supp. 2d 1, 3-4 (D.D.C. 1999) (citing In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1173-76 (D.C. Cir. 1987), aff'd sub nom. Chan v. Korean Air Lines, Ltd., 490 U.S. 122 (1989)).

Research Inst., LLC v. Fiber Research Int'l, LLC, No. 15-CV-00595-BAS(MDD), 2016 WL 739795, at *3 (S.D. Cal. Feb. 25, 2016) (internal quotations and alterations omitted).

### 2. Analysis

Lemberg first urges the court to strike paragraphs 178 and 123 of the second amended answer, which it declares to be impertinent and scandalous. Impertinent claims are those that are not responsive or are irrelevant to the issues in the case, and which are inadmissible as evidence. In re 2TheMart.com, Inc. Sec. Litig., 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). Scandalous claims are those that "cast a cruelly derogatory light on a party or other person." Id.

The court finds that the allegations in paragraphs 178 and 123 are neither impertinent nor scandalous. They go to the heart of Hussin's claims—that Lemberg cheated her out of money and business and later filed this action to harass, annoy, and embarrass her—however harsh those claims may be. Hussin simply presents her interpretation of the facts, including that Lemberg threatened her with "financial ruin." While these allegations may be couched in strong language, they fall short of casting a "cruelly derogatory light" on Lemberg. See id.

Next, Lemberg asks the court to strike paragraphs 91–99 and 111–113 as irrelevant. Again, the court declines to do so. The paragraphs at issue relate to Hussin's allegations that Lemberg did not pay her the full portion of monies owed her, whether because Lemberg allegedly deducted improper costs before splitting the fee, settled cases on which Hussin had worked without alerting her, or blocked Hussin from accessing and evaluating cases she once controlled. Lemberg contends that these allegations, along with being irrelevant, are also wholly inaccurate, but that argument goes to the merits of Hussin's claims and is not for the court to decide at this time.

Finally, Lemberg moves to strike paragraphs 8–59 and 96–101 because the allegations do not pertain to any claim for relief or affirmative defense and do not serve any legitimate purpose as part of the pleading. For the same reasons stated above, and recognizing that motions to strike are generally disfavored, the court disagrees and will

not strike these paragraphs. See Multimedia Patent Trust v. Microsoft Corp., 525 F. Supp. 2d 1200, 1211 (S.D. Cal. 2007) (stating that courts must accept nonmoving party's allegations and liberally construe the pleadings in their favor in deciding Rule 12(f) motion to strike).

In sum, the court denies Lemberg's Rule 12(f) motion to strike.

**B.     Motion to Dismiss Under Rule 12(b)(1)**

Lemberg moves the court to dismiss under Rule 12(b)(1) certain counterclaims, which it terms "claims on behalf of former clients." Lemberg contends that the court does not have subject matter jurisdiction over these claims because Hussin does not have standing to bring them on behalf of third parties.

**1.     Legal Standards**

Federal courts are courts of limited jurisdiction. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998). A Rule 12(b)(1) motion challenging subject matter jurisdiction may be facial or factual. See, e.g., Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). To resolve a facial challenge, as Lemberg makes here, the court considers whether "the allegations contained in [the] complaint are insufficient on their face to invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). The court must accept Hussin's allegations and draw all reasonable inferences in her favor. Wolfe v. Strankman, 392 F.3d 358 (9th Cir. 2004). As the party putting the claims before the court, Hussin bears the burden of establishing jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).

**2.     Analysis**

There is no subject matter jurisdiction without standing, and the "irreducible constitutional minimum" of standing consists of three elements. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). A plaintiff must have (1) suffered an injury in fact,

(2) which is fairly traceable to the challenged conduct of the defendant, and (3) which is likely to be redressed by a favorable judicial decision. Id. at 560–61. As a general rule, a plaintiff does not have standing to assert the rights of third parties. Kowalski v. Tesmer, 543 U.S. 125, 136 (2004); McCollum v. California Dep't of Corr. & Rehab., 647 F.3d 870, 878 (9th Cir. 2011).

In arguing that Hussin does not have standing to assert the rights of others, Lemberg misunderstands, or ignores, Hussin's allegations. It is true that Hussin alleges that Lemberg improperly deducted costs that would have otherwise gone to third-party clients in the form of a bigger recovery. But Hussin's fundamental claim is that a portion of those costs would have also gone to her in the form of a bigger fee split. Thus, in making these allegations, Hussin is not simply seeking to vindicate wrongs done to others. Instead, she is seeking to recover compensation to which she believes she is entitled. That injury warrants standing. Even if it did not, however, Hussin's allegations that Lemberg unlawfully affixed her signature on settlement documentation and then failed to pay her for those settlements certainly warrants standing, despite the fact that third parties were involved.

Those injuries also distinguish the instant case from those cases that Lemberg cites to support its argument. For example, in Pony v. County of Los Angeles, 433 F.3d 1138 (9th Cir. 2006), cited by Lemberg, the Ninth Circuit held that because 42 U.S.C. § 1988 vests the right to seek attorney's fees in the prevailing party—not its attorney—an attorney had no standing to pursue attorneys' fees based on his position as the prevailing party's former attorney or under a retainer agreement that called for the client to apply for attorneys' fees. Id. at 1141–42. Thus, the rule set forth in Pony simply does not weigh on the question currently before the court: whether Hussin has standing to pursue claims against Lemberg for taking actions that not only reduced the recovery of third parties, but also Hussin. Likewise, the Supreme Court's holding in Kowalski v. Tesmer, 543 U.S. 125, 134 (2004)—that attorneys lack third-party standing to bring an action on behalf of hypothetical future clients—does not impact this case.

Accordingly, the court denies Lemberg's Rule 12(b)(1) motion based on lack of standing.

### C.  Motion to Dismiss Under Rule 12(b)(6)

Lemberg next moves the court to strike two of Hussin's three affirmative defenses and six of her seven counterclaims under Rule 12(b)(6).

#### 1.  Legal Standards

A Rule 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency of the pleadings. To overcome such a motion, the complaint—or counterclaim in this case—must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Facts merely consistent with a defendant's liability are insufficient to survive a motion to dismiss because they establish only that the allegations are possible rather than plausible. Id. at 678–79. The court must accept as true the facts alleged in a well-pleaded complaint, although mere legal conclusions are not entitled to an assumption of truth. Id. Finally, the court must construe the pleading in the light most favorable to the plaintiff. Concha v. London, 62 F.3d 1493, 1500 (9th Cir. 1995).

The court evaluates a motion to dismiss affirmative defenses under a different standard, however. In that circumstance, "the fair notice required by the pleading standards only requires describing [an affirmative] defense in general terms." Kohler v. Flava Enterprises, Inc., 779 F.3d 1016, 1019 (9th Cir. 2015); see also Weintraub v. Law Office of Patenaude & Felix, A.P.C., 299 F.R.D. 661, 664 (S.D. Cal. 2014) (declining to extend Twombly pleading standards to affirmative defenses (citing Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1023 (9th Cir. 2010)); Fed. R. Civ. P. 8 (requiring litigants to "show[]" they are entitled to relief under Rule 8(a) but only "affirmatively state" their defenses under Rule 8(c)).

**2.     Analysis**

     **a.     Affirmative Defenses**

Lemberg argues that the court must dismiss Hussin's first and second affirmative defenses, for material breach and unclean hands, respectively. As to the first defense, Lemberg argues that Hussin failed to show that any breach on Lemberg's part was material. But Hussin is not required to make that showing now. For now, Hussin must only give Lemberg fair notice of the defense. She is not required to make her case on the merits, or even comply with the more stringent Twombly/Iqbal pleading standard. See Polk v. Legal Recovery Law Offices, 291 F.R.D. 485, 490 (S.D. Cal. 2013) (finding persuasive District of Colorado's logic that "it is reasonable to impose stricter pleading requirements on a plaintiff who has significantly more time to develop factual support for his claims than a defendant who is only given twenty days to respond to a complaint and assert its affirmative defenses"). By stating that Lemberg (a) unlawfully caused Hussin's signature to be affixed on settlement documentation, (b) failed to pay Hussin agreed-upon fees, and (c) failed to pay Hussin for certain settlements, Hussin has met the threshold requirement of fair notice. (Doc. No. 48 at 8-9.) Similarly, by stating that this same conduct also constitutes unclean hands, Hussin has provided fair notice to Lemberg of her second affirmative defense. At this stage, nothing more is required.

Accordingly, the court denies Lemberg's motion to dismiss Hussin's affirmative defenses.

     **b.     Counterclaims**

Lemberg also moves to dismiss six of Hussin's counterclaims,[2] which the court

---

[2] The court must determine what law applies to the common law claims in this case. Following transfers for convenience under 28 U.S.C. § 1404(a), the transferee court in a diversity case must apply the law of the state in which the action was originally filed. Van Dusen v. Barrack, 376 U.S. 612, 639 (1964). That does not mean the law of the transferor state will always apply, however, because in a diversity case, part of the state law that would have been applied is the choice of law rules of the forum state, Klaxon Company v. Stentor Electric Manufacturing Company, Inc., 313 U.S. 487, 496 (1941),

evaluates under the Twombly/Iqbal standard.

### i. Count One – Breach of Contract

Under Connecticut law, the elements of breach of contract are "the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." Am. Exp. Centurion Bank v. Head, 115 Conn. App. 10, 15–16 (2009). Lemberg argues that Hussin may not assert a claim for breach of contract because the parties never formed "an agreement that included within it the terms that are claimed to have been breached." But paragraph 31 of Lemberg's complaint states that "Hussin and Plaintiff negotiated a separation agreement," and paragraphs 32 and 33 discuss the fee split between the parties. While that agreement may not have explicitly addressed "administrative fees, PrivacyStar fees, conversations with clients, [or] treatment of

---

and that state's choice of law rules may call for application of the law of the transferee state or some third state. Under Connecticut choice of law rules, for claims "that sound in tort, namely, civil conspiracy, unjust enrichment and CUTPA, we apply the law of the state in which the plaintiff was injured, unless to do so would produce an arbitrary or irrational result." Macomber v. Travelers Prop. & Cas. Corp., 277 Conn. 617, 640 (2006); see also In re Trilegiant Corp., Inc., 11 F. Supp. 3d 132, 147 (D. Conn. 2014) (stating that CUTPA may apply where defendant's place of business is located in Connecticut and violation is therefore "intimately associated" with the state). For contract claims, Connecticut employs "the 'significant relationship' test, and presume[s] the application of the law of the state in which the bulk of the transaction took place." Macomber, 277 Conn. at 640. Here, the conduct at issue occurred both in Connecticut and California, as well as places in between. But it is notable that Lemberg, the plaintiff in this case, brought its claims in Connecticut and under Connecticut law, indicating that it was injured in that state. See Macomber, 277 Conn. at 640. And Hussin brought her counterclaims under Connecticut law, indicating the same. Moreover, Connecticut obviously has a significant relationship to the alleged actions of both parties, and neither party has provided the court with any argument that under Connecticut choice of law rules, California law must apply. See Pont v. Barker, No. 4002020, 2006 WL 1679738, at *1 (Conn. Super. Ct. May 30, 2006) (refusing to consider application of Rhode Island law where defendant had not alleged in its answer or special defenses that a choice of law issue existed). For all these reasons, the court determines that Connecticut law applies.

expenses" as Lemberg contends, the agreement still covered the distribution of client fees, which is at the heart of Hussin's allegations.

Lemberg also argues that Hussin has failed to allege her own performance or a legal excuse for nonperformance. It is true, as Lemberg points out, that "[o]ne cannot recover upon a contract unless he has fully performed his own obligation under it, has tendered performance, or has some legal excuse for not performing." Auto. Ins. Co. v. Model Family Laundries, 133 Conn. 433, 437 (1947). But it is also true that "a material breach by one party discharges the other party's subsequent duty to perform on the contract." Weiss v. Smulders, 313 Conn. 227, 263 (2014). Here, Hussin provides sufficient facts that she performed her end of the agreement until Lemberg allegedly breached that agreement, stating that she prosecuted and settled joint cases until she began to distrust Lemberg's manner of distributing proceeds. (Doc. No. 48 at 25–26.) Construing the claims in Hussin's favor, as the court must, Hussin has asserted sufficient facts to sustain a breach of contract claim. See GDS Contracting Corp. v. Sacred Heart Univ., Inc., No. CV156030191, 2016 WL 673361, at *2 (Conn. Super. Ct. Jan. 21, 2016) (refusing to dismiss breach of contract claim under similar circumstances).

Thus, the court denies the motion to dismiss Count One.

### ii. Count Two – Violation of CUTPA

Connecticut General Statutes section 42-110b(a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." In determining whether a practice violates CUTPA, the court considers (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—or in other words, whether it is within the "penumbra" of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers, competitors, or other business persons. Ulbrich v. Groth, 310 Conn. 375, 409 (2013). "All three criteria do not need to be satisfied to support a finding of

unfairness." Id. "Thus a violation of CUTPA may be established by showing either an actual deceptive practice or a practice amounting to a violation of public policy." Id. CUTPA provides a private cause of action to any person "who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a prohibited method, act or practice." Id. at 409–10 (alterations omitted).

While "not every contractual breach rises to the level of a CUTPA violation," Hudson United Bank v. Cinnamon Ridge Corp., 81 Conn. App. 557, 571 (2004), a breach of contract may form the basis of a CUTPA claim "when the defendant's contractual breach [is] accompanied by aggravating circumstances," Ulbrich, 310 Conn. at 411. As alleged, those aggravating circumstances exist in this case. Hussin has pled ample facts to demonstrate that Lemberg engaged in some manner of unfair, "immoral, unethical, oppressive, or unscrupulous" behavior that injured Hussin. See id. at 409.

Lemberg directs the court to Haynes v. Yale-New Haven Hospital, 243 Conn. 17, 34 (1997), in support of its argument that CUTPA does not cover this case, but Haynes merely holds that "professional negligence—that is, malpractice—does not fall under CUTPA." Id. As the Haynes court notes, CUTPA does indeed cover "the entrepreneurial or commercial aspects of the profession of law," which include Lemberg's behavior vis-à-vis Hussin here. Id. at 34–35.

Thus, the court denies the motion to dismiss Count Two.

### iii.     Count Three – Conversion

The Supreme Court of Connecticut has "defined conversion as an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights." Macomber v. Travelers Prop. & Cas. Corp., 261 Conn. 620, 649 (2002). "It is some unauthorized act which deprives another of his property permanently or for an indefinite time . . . ." Id. To be sure, money can be subject to conversion. Deming v. Nationwide Mut. Ins. Co., 279 Conn. 745, 771 (2006). But for Hussin's conversion claim to survive a motion to dismiss, she must plausibly allege how the money that Lemberg allegedly retained for itself was her property.

In <u>Macomber</u>, the Supreme Court of Connecticut cited <u>National Union Fire Ins. Co. v. Wilkins-Lowe & Co.</u>, 29 F.3d 337, 340 (7th Cir. 1994), for the proposition that an action for conversion of funds "may not be maintained to satisfy a mere obligation to pay money. It must be shown that the money claimed, or its equivalent, at all times *belonged to the plaintiff* and that the defendant converted it to his own use." 261 Conn. at 650 (emphasis in original and alterations omitted). Because the agreement between Hussin and Lemberg called for Lemberg to receive the fees before distributing them to Hussin, (Doc. 48 at 25), Hussin cannot allege that the money at issue ever belonged to her, or that she ever owned or was in possession of the same. Her claim for conversion is therefore more appropriately viewed as a breach of contract claim.

Thus, the court grants the motion to dismiss Count Three without leave to amend.

### iv.     Count Four – Statutory Theft

Statutory theft under Connecticut General Statutes section 52-564 is synonymous with larceny, which occurs when, "with intent to deprive another of property or to appropriate the same to himself or a third person, [an individual] wrongfully takes, obtains or withholds such property from an owner." <u>Deming</u>, 279 Conn. at 771. "Therefore, statutory theft requires a plaintiff to prove the additional element of intent over and above what he or she must demonstrate to prove conversion." <u>Id.</u> As with conversion, money can be the subject of statutory theft, but Hussin must plead legal ownership or the right to possession of specifically identifiable funds. <u>Id.</u> at 771–72.

The court in <u>Deming</u> applied this rule in concluding that the plaintiffs' claims of conversion and statutory theft failed because they did not allege "that they ever possessed or owned legal title to these funds. At best, the defendants merely are obligated to pay the money." <u>Id.</u> at 773. The court held as much even though the funds at issue were held in separate accounts designated for each plaintiff. <u>Id.</u> Thus, for those reasons discussed in the previous section, the court grants the motion to dismiss Count Four without leave to amend.

///

### v. Count Five – Quantum Meruit

"Quantum meruit is a theory of contract recovery that does not depend upon the existence of a contract, either express or implied in fact." Gagne v. Vaccaro, 255 Conn. 390, 401 (2001). "Rather, quantum meruit arises out of the need to avoid unjust enrichment to a party, even in the absence of an actual agreement." Id. "Centered on the prevention of injustice, quantum meruit strikes the appropriate balance by evaluating the equities and guaranteeing that the party who has rendered services receives a reasonable sum for those services." Id.

A litigant may plead a claim for quantum meruit "in the alternative to a claim for breach of contract [because the] quantum meruit doctrine allows for restitution in situations where a valid contract does not exist." Law Offices of Frank N. Peluso, P.C. v. Cotrone, No. FSTCV095011618S, 2016 WL 3391530, at *6 (Conn. Super. Ct. May 25, 2016) (citing Biller Assoc. v. Rte. 156 Realty Co., 52 Conn. App. 18, 30 (1999), aff'd, 252 Conn. 400 (2000)). A plaintiff pleading quantum meruit "must allege facts to support the theory that the defendant, by knowingly accepting the services of the plaintiff and representing to her that she would be compensated in the future, impliedly promised to pay her for the services she rendered." Burns v. Koellmer, 11 Conn. App. 375, 383–84 (1987).

Here, although Lemberg and Hussin agree that the parties had a separation agreement, Hussin may plead quantum meruit in the alternative in the event that the trier of fact eventually determines that no valid contract existed.

Thus, the court denies Lemberg's motion to dismiss Count Five.

### vi. Count Six – Unjust Enrichment

Lemberg does not move to dismiss Count Six for unjust enrichment.[3]

---

[3] The court notes that unjust enrichment and quantum meruit are both "forms of the equitable remedy of restitution by which a plaintiff may recover the benefit conferred on a defendant in situations where no express contract has been entered into by the parties." Burns, 11 Conn. App. at 385. Unjust enrichment "has been the form of action commonly

### vii.  Count Seven – Abuse of Process

In her opposition to Lemberg's motion to dismiss, Hussin agreed to voluntarily withdraw her claim for abuse of process as untimely.  Thus, the court grants the motion to dismiss Count Seven without leave to amend.

## CONCLUSION

For the foregoing reasons, the court grants in part and denies in part Plaintiff's motion.  Counts Three, Four, and Seven of Hussin's counterclaims are dismissed without leave to amend.  The court denies the remainder of Lemberg's motion.

IT IS SO ORDERED.

DATED: September 29, 2016

JEFFREY T. MILLER
United States District Judge

---

pursued . . . when the benefit that the enriched party receives is either money or property," while quantum meruit "is the form of action which has been utilized when the benefit received was the work, labor, or services of the party seeking restitution." Id. at 384.  As such, while Hussin is free to plead both theories of recovery, she can ultimately recover under only one. See Sidney v. DeVries, 215 Conn. 350, 351 n.1 (1990).