Tammy Hussin (State Bar No. 155290)
HUSSIN LAW
1302 N Coast Highway 101
Ste. 201
Encinitas, CA 92024
Tel:  (877) 677-5397
Fax: (877) 667-1547
Email: tammy@hussinlaw.com

Defendant & Counterclaimant Pro Se

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEMBERG LAW LLC,<br><br>        Plaintiff,<br><br>  vs.<br><br>TAMMY HUSSIN, LAW OFFICE OF TAMMY HUSSIN P.C. d/b/a HUSSIN LAW,<br><br>      Defendants | CASE NO. 3:16-cv-01727-JM-WVG<br><br>[Assigned to Hon. Jeffrey T. Miller and Referred to Magistrate Judge William V. Gallo]<br><br>**NOTICE OF MOTION AND MOTION FOR SPECIAL ANTI-SLAPP MOTION TO STRIKE PLAINTIFF'S COUNTERCLAIM IN REPLY FOR ATTEMPTED CIVIL EXTORTION AND TO DISMISS LEMBERG'S COUNTERCLAIMS IN REPLY**<br><br>[Cal. Code Civ. Proc. § 425.16]<br><br>Date:   January 23, 2017<br>Time:   10:00 a.m.<br>Crtrm.: 5D, Hon.Jeffrey T. Miller<br>Trial Date:  None Set |

TO: ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

     PLEASE TAKE NOTICE that Defendants & Counterclaimants Tammy

Hussin and the Law Office of Tammy Hussin P.C. d/b/a/ Hussin Law will and

hereby do move this Court for an Order striking the Counterclaim for Attempted Civil Extortion filed on October 13, 2016 (Dkt. No. 153), of Plaintiff and Counterclaimant-in-Reply Lemberg Law LLC. This motion is brought under California Code of Civil Procedure § 425.16. In addition, Defendants move to dismiss Lemberg's remaining counterclaims in reply pursuant to Fed. Rule Civ. Proc. 12(b)(6). In support of their Anti-SLAPP Motion, Defendants intend to rely upon the Memorandum of Points and Authorities, and the Declaration of Tammy Hussin filed concurrently herewith, along with the exhibits attached thereto, any and all relevant papers in the court's file, and any such other evidence that may be presented to the Court.

DATED: November 7, 2016

By: /s/ *Tammy Hussin*
Tammy Hussin
In Pro Per and attorney for Law Office of Tammy Hussin, P.C.

1

2

## TABLE OF CONTENTS

3    I. INTRODUCTION ................................................................................ 3

4    MEMORANDUM OF POINTS AND AUTHORITIES ................................ 3

5    II. LEGAL STANDARD ........................................................................ 4

6    III. ARGUMENT ................................................................................. 6

7    A. LEMBERG'S CLAIM FOR ATTEMPTED CIVIL EXTORTION IS SUBJECT TO AN
8       ANTI-SLAPP MOTION ................................................................... 6

9       1. The Attempted Civil Extortion Claim Arises from Acts in Furtherance of
          Hussin's Right of Petition or Free Speech. ...................................... 6

10      2. Hussin's Statement were made in a Public Forum in Furtherance of
11         Free Speech and were in Connection  with an Issue of Public Interest ...... 8

12      3. Lemberg Cannot Show a Probability of Prevailing On Its Attempted
           Civil Extortion Counterclaim .......................................................... 9

13         a. Lemberg Fails to State a Claim for Attempted Civil Extortion ............. 10

14         b. The California Litigation Privilege Precludes Liability for Hussin's
15            Protected Speech and Petitioning Activity ................................... 13

16      4. Defendants Are Entitled to Mandatory Fees and Costs if They Prevail
           on the Anti-SLAPP Motion ......................................................... 16

17   B. Plaintiff's Additional Counterclaims in Reply Should Be Dismissed As They
18      Are Permissive and Should Have Been Filed in an Amended Complaint ........ 16

19   C. Lemberg's Second Claim for Recoupment is Vague and Fails to State
        A Claim for Relief ...................................................................... 18

20   D. The Third Counterclaim for Breach of Fiduciary Duty Fails to State
21      A Claim for Relief As No Fiduciary Duty Exists  Between the Parties .............. 19

22   E. The Fourth and Fifth Counterclaims for Intentional Interference with
        Contractual and Prospective Economic  Relations Fail to State Claims
23      for Relief ................................................................................. 21

     CONCLUSION ................................................................................ 23

24

25

26

27

28

i

1

## Cases

2

3
*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241 .......................................................................................... 13

4
*Ashcroft v. Iqbal*, U.S. , 129 S. Ct. 1937, 1949, 173 .................................. 6

5
*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 59, fn.4.................................... 8

6
*Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 556, 570, 127 S. Ct. 1955, 1965,
7
   1974, 167 L. Ed. 2d 929 (2007) ............................................................. 6

8
*Choyce v SF Bay Area Independent Media Center*, 13-cv-01842-JST, Document 22
   (N.D. Cal. 2013)..................................................................... 5, 6, 8, 9

9
*ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1018 (2001) ..................... 16

10
*Crittenden v. Royce* (1924) 100 Conn. 617,620 ........................................ 19

11
*Equilon Enterprises* (2002) 29 Cal.4th 53, 67 ......................................... 5

12
*Flatley v. Mauro* (2006) 121 Cal.App.4th 1523 ...................................... 10

13
Gilbert v. Sykes (2007) 147 Cal.App.4th 13, 23 ........................................ 13

14
*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 362 ........................ 14

15
Hecimovich v. Encinal Sch. Parent Teacher Org. (2012) 203 Cal.App.4th 450, 464,
16
   review denied (Apr. 25, 2012) (quoting Gilbert v. Sykes (2007) 147 Cal.App.4th
   13, 23 (internal quotation marks omitted) ............................................ 13

17
*Hiho Tower, Inc. v. Comtronics Inc*. (2000) 255 Conn. 20.............................. 19

18
*Horton v Cavalry Portfolio Services*, Case No. 13-CV-00307-JAH (WVG). 3, 12, 13, 20,
19
  21, 22, 23

20
*In re Pegasus Gold Corp*., 394 F.3d 1189, 1195-96 (9th Cir.2005) ....................... 17

21
*Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001) .................................... 16

22
*Krejci v. Cavalry Portfolio Servs, LLC*, No. 3:16-cv-0211-JLS-WVG (S.D. Cal.) .......... 21

23
*Lebbos v. State Bar* (1985) 165 Cal.App.3d 656, 668 ................................. 13

24
*Lemberg v Hussin*, Case 3:16-mc-80066-JCS (N.D. Cal.) Document 19, June 13, 2016
   ........................................................................................ 22

25
*Lynch v. Cruttenden & Co*. (1993) 18 Cal.App.4th 802, 80 ........................... 19

26
*Mattel, Inc v. MGA Entertainment, Inc*., 705 F.3d 1008, 1110 (9th Cir. 2013)......... 16

27
*McGuire v. Superior Court* (1993) 12 Cal.App.4th 1685, 1687 ........................ 8

28

*Mendoza v. Hamzeh* (2013) 215 Cal.App.4th 799.................................................... 10

*Mix v. Tumanjan Development Corp.* (2002) 102 Cal.App.4th 1318 ,
126 Cal.Rptr.2d 267 ......................................................................................... 16

*Monterey Plaza Hotel v. Hotel Employees & Restaurant Employees Local 483*, 69
Cal.App.4th 1057 (1999) ...................................................................................... 8

*NBC Subsidiary (KNBC–TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178,
1208, fn. 25 ..................................................................................................... 7

*Nixon v. Warner Comm., Inc.* (1978) 435 U.S. 589, 597 ............................................ 7

*Rickel v. Schwinn Bicycle Co.* (1983) 144 Cal.App.3d 648........................................ 19
*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 ...................................................... 13

*Southeastern Indus. Tire Co., Inc. v. Duraprene Corp.*, 70 F.R.D. 585, 588
 (E.D. Pa. 1976)................................................................................................. 16

*Standing Comm. on Discipline of U.S. Dist. Court for S. Dist. of California v. Ross*, 735
F.2d 1168, 1170 (9th Cir. 1984) ............................................................................ 8

*Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1110* (9th Cir. 2003).......................... 6

*Vieste, LLC v. Hill Redwood Dev.*, 2011 U.S. Dist. LEXIS 157915, 9-10
 (N.D. Cal. Apr. 5, 2011........................................................................................ 17

*Wolf's New Process Abrasive Wheel v. Resnik* (1950) 16 Conn. Super. Ct. 415 ....... 19

<u>Statutes</u>

California anti-SLAPP ("Strategic Lawsuit Against Public Participation") .................. 4

<u>Other Authorities</u>

Cal. Civ. Proc. Code § 425.16 ............................................................................. 2
Cal. Civ. Proc. Code § 425.16(c) .......................................................................... 16
Cal. Code Civ. Proc. § 425.16(a) ........................................................................... 5
Cal. Code Civ. Proc. § 425.16(e) ........................................................................... 7
Cal. Code Civ. Proc. § 425.16(e)(2)....................................................................... 7
Cal. Code Civ. Proc. § 425.16(e)(3)....................................................................... 8
California Penal Code § 518 ................................................................................. 4

Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 25 1410,
at 52 (3d ed. 2010)............................................................................................. 17

Connecticut General Statutes Sec. 42a-3-305, subd. (3) ........................................ 18

<u>Rules</u>

Fed. Rule Civ. Proc. 12(b)(6)............................................................................... 2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This litigation was initiated by Lemberg in May of 2015. Lemberg's Complaint essentially alleges Hussin welched on her promise to pay him forty percent of the fees earned, solicited clients of Lemberg Law, and stole proprietary information from his database. Hussin vehemently denies the allegations, and contends that Lemberg filed this litigation in an attempt to intimidate and bully Hussin into relinquishing her entitlement to a percentage of the fees in a class action here in the Southern District, *Horton v Cavalry Portfolio Services*, Case No. 13-CV-00307-JAH (WVG) (the "Horton Class Action").

Hussin's Second Amended Counterclaims ("SACC") tells quite a different story. Hussin acknowledges she refused to perform under the terms of their agreement, but claims she was completely justified in doing so. Hussin alleges Lemberg materially breached their agreement by engaging in an expansive pattern of unlawful and unethical conduct, causing harm to clients and to Hussin. Among other things, Hussin alleges Lemberg engaged in the unauthorized practice of law, and misappropriated client settlement funds and devised a scheme to take extra profits from unsuspecting clients. In addition, Hussin alleges Lemberg referred clients to Hussin Law who were unaware of legal representation and who had unknowingly requested legal services from Lemberg Law. Hussin also claims Lemberg forged her signature on settlement documentation and failed to pay Hussin in accordance with their separation agreement. Hussin also claims Lemberg coerced Hussin into withdrawing from the Horton Class Action by sending her emails with threats and verbal assaults.

Lemberg answered Hussin's SACC and included a plethora of new counterclaims in reply (Document No. 153, filed Oct. 13, 2016). Lemberg now claims Hussin attempted to extort him by threatening to report him to the bar in order to

"dissuade Plaintiff from seeking damages against Defendants." Although Hussin did in fact threaten Lemberg she would report him to the state bar to the state bar, it had nothing to do with attempting to extort money from Lemberg.

Now, more than two years later, Lemberg claims Hussin's sworn statements during this litigation amount to extortion and that "no proximate cause was found with respect to the ethics complaint which was dismissed." Aside from the fact, Hussin was protected under the litigation privilege, Hussin remains steadfast Lemberg violated a multitude of ethical obligations, and in fact offers incontrovertible documentary proof attached to her Declaration in Support of this Motion. *See*, Declaration of Tammy Hussin, filed concurrently herewith. The fact that Connecticut for whatever reason elected not to pursue a claim against Lemberg should have no bearing on this case, nor can it help form the basis of an attempted extortion claim.

Lemberg's Attempted Civil Extortion under California Penal Code § 518 is certain to fail. Lemberg relies on statements Hussin made during this litigation and in furtherance of her right free speech, and they are subject to a special motion to strike under California Code of Civil Procedure § 425.16. Moreover, Lemberg has not, *nor can he*, show a probability of prevailing on a claim for attempted civil extortion. Most of the allegations Lemberg relies upon are privileged, and the remaining allegations do not support a claim for extortion.

In addition, Lemberg's counterclaims in reply are improper because they are not compulsory, but permissive in nature, and should have been brought as a Motion to Amend the Complaint. In addition, Lemberg's new counterclaims in reply fail to support a claim for relief and his allegations are conclusory and hollow. and lack the specificity required to properly put Hussin on notice.

## II.   LEGAL STANDARD

The California anti-SLAPP ("Strategic Lawsuit Against Public Participation") statute permits defendants to gain early dismissal of claims through a special motion

1   to strike civil actions "brought primarily to chill the valid exercise of the

2   constitutional rights of freedom of speech." Cal. Code Civ. Proc. § 425.16(a). The

3   anti-SLAPP statute provides: "A cause of action against a person arising from any

4   act of that person in furtherance of the person's right of petition or free speech under

5   the United States Constitution or the California Constitution in connection with a

6   public issue shall be subject to a special motion to strike, unless the court determines

7   that there is a probability that the plaintiff will prevail on the claim." *Id*.

8   §425.16(b)(1).

9       To determine whether a defendant is entitled to specially strike an anti-

10  SLAPP action, state courts engage in a two-part burden-shifting inquiry. First, the

11  moving party must make a "prima facie showing" that the challenged claims arise

12  from an alleged act which was taken "in furtherance of the defendant's right of

13  petition or free speech under the United States or California Constitution in

14  connection with a public issue." *Equilon Enterprises* (2002) 29 Cal.4th 53, 67. "The

15  defendant need not show that the plaintiff's suit was brought with the intention to

16  chill the defendant's speech; the plaintiff's intentions are ultimately beside the point.

17  Similarly, the defendant bringing a motion to strike need not show that any speech

18  was actually chilled." *Choyce v SF Bay Area Independent Media Center*, 13-cv-

19  01842-JST, Document 22 (N.D. Cal. 2013). "[A]ny doubt about whether the

20  challenged statements relate to a matter of public interest must be resolved in favor

21  of favoring freedom of speech, because "the question whether something is an issue

22  of public interest must be `construed broadly.'" *Id*. at p. 11. (internal quotation marks

23  omitted)).

24      Second, once the defendant has made a prima facie showing, the burden shifts

25  to the plaintiff to demonstrate a probability of prevailing on the challenged claims. If

26  the court determines that the plaintiff has established that there is a probability that

27  the plaintiff will prevail on the claim, the motion to strike must be denied. *Vess v.*

28

1    *Ciba-Geigy Corp. USA, 317 F.3d 1097, 1110* (9th Cir. 2003). In federal court, when

2    "a defendant makes a special motion to strike based on alleged deficiencies in the

3    plaintiff's complaint, the motion must be treated in the same manner as a motion

4    under Rule 12(b)(6), except that the attorney's fee provision of § 425.16(c) applies.

5    Rogers, 57 Supp. 2d at 980." *Choyce*, at p. 9.

6        To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain

7    sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

8    on its face.'... A claim has facial plausibility when the plaintiff pleads factual content

9    that allows the court to draw a reasonable inference that the defendant is liable for

10    the misconduct alleged." *Ashcroft v. Iqbal*, U.S. , 129 S. Ct. 1937, 1949, 173

11    3 L. Ed. 2d 868 (2009), citing *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544,

12    556, 570, 127 S. Ct. 1955, 1965, 1974, 167 L. Ed. 2d 929 (2007). A court should

13    first discard conclusory allegations and then determine whether the well-pleaded

14    facts support a plausible inference of the underlying misconduct alleged. *See*

15    *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[T]he mere possibility of

16    misconduct" is insufficient. *Id.*, at 1950.

## III.   <u>ARGUMENT</u>

### A.  <u>LEMBERG'S CLAIM FOR ATTEMPTED CIVIL EXTORTION IS SUBJECT TO AN ANTI-SLAPP MOTION</u>

**1. The Attempted Civil Extortion Claim Arises from Acts in Furtherance of Hussin's Right of Petition or Free Speech.**

Lemberg's claim for attempted civil extortion alleges Hussin "threatened to

bring an ethics complaint against Plaintiff in order to dissuade Plaintiff from seeking

damages from Defendants." (Doc. 153, pp. 17-18, Counterclaim Count 1, para 2).

Lemberg alleges Hussin then filed the ethics complaint for the purpose of dissuading

Plaintiff from prosecuting its rights to payment under the parties' agreement." (*Id.*

para 3). Lemberg then claims after Hussin lodge the ethics complaint, Hussin "purposely made the confidential allegations public by including them in their Counterclaim," "circulated the Counterclaim to members of the bar," and also disclosed the substance of the ethics complaint in her pleadings and in other ways (*Id*. paras 4, 5, and 11).

Each of these communications "arise from an alleged act which was taken "in furtherance of the [Hussin's] right of petition or free speech under the United States or California Constitution…." Cal. Code Civ. Proc. § 425.16(e). While Lemberg cryptically couches Hussin's statements as a "threat," Hussin had a free speech right to tell Lemberg that she intended to submit an ethics complaint against him. In addition, Hussin had every right to file the ethics complaint, as the contents of the complaint were clearly a "written or oral statement or writing made before…any other official proceeding authorized by law." Cal. Code Civ. Proc. § 425.16(e)(2). Likewise, Hussin's reference to the ethics complaint in her pleadings filed in this action were also "written or oral statement or writing made before a…judicial proceeding …." *Id*. Lemberg also relies on quotes from Declarations Hussin filed in this litigation. (Counterclaim, Count 1, paras 8, 9). These, too, are statements that Hussin was free to make as they were made in an official proceeding. Cal. Code Civ. Proc. § 425.16(e)(2).

Likewise, Hussin's alleged "circulation" or disclosure of her Counterclaim to other attorneys, which included a reference to the ethics complaint, also falls within the anti-SLAPP statute. Nearly all jurisdictions, including California, have also long recognized a common law right of access to public documents, including court records. *See Nixon v. Warner Comm., Inc*. (1978) 435 U.S. 589, 597; *NBC Subsidiary (KNBC–TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1208, fn. 25 (recognizing a First Amendment-based right of access to certain court documents.) In California, court records are "open to the public unless they are specifically

exempted from disclosure by statute or are protected by the court itself due to the necessity of confidentiality." *McGuire v. Superior Court* (1993) 12 Cal.App.4th 1685, 1687. *See also, Monterey Plaza Hotel v. Hotel Employees & Restaurant Employees Local 483*, 69 Cal.App.4th 1057 (1999) (providing copy of complaint and discussing allegations with news media are protected by antiSLAPP). As such, Hussin's Counterclaim and the alleged circulation of her Counterclaim, were in furtherance of her right to free speech and protected under the Anti-SLAPP statute.

2.   **Hussin's Statement were made in a Public Forum in Furtherance of Free Speech and were in Connection with an Issue of Public Interest.**

Hussin was also free to make the statements because they were a matter of public concern. Hussin's statements made in her counterclaim, and to the extent Lemberg alleges Hussin then circulated the counterclaim to members of the bar, constitute a written statement or writing made in a public forum. Cal. Code Civ. Proc. § 425.16(e)(3). It was "made in a public forum" because once Hussin's Counterclaim was filed with the court and became available on the PACER website, any attorney or member of the public could have accessed it. "Web sites accessible to the public…are 'public forums' for purposes of the anti-SLAPP statute." *Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 59, fn.4. California courts recognize a high level of public interest in the conduct of an attorney. Lawyering is "a profession imbued with the public interest and trust," *Standing Comm. on Discipline of U.S. Dist. Court for S. Dist. of California v. Ross*, 735 F.2d 1168, 1170 (9th Cir. 1984); accord, *Choyce v SF Bay Area Independent Media Center*, 13-cv-01842- JST, (N.D. Cal. Nov. 2, 2014). In *Choyce*, the Court held "statements that an attorney has embezzled from clients, and is being prosecuted for doing so, relate to an issue of public interest" and "that substantial number of people, especially potential clients, would be concerned, for reasons beyond mere curiosity, with whether an attorney was embezzling from clients, and the statements alleged in the complaint are closely

connected to that interest." *Choyce*, at 13.

Similarly, Hussin's statements regarding Lemberg's misconduct and the fact Lemberg's misconduct rose to the level of filing an ethics complaint is a matter of public interest. Hussin alleges Lemberg engaged in a veritable plethora of misconduct and unlawful business practices, causing injury to unsuspecting and unsophisticated consumers. Hussin also alleges she made repeated demands to Lemberg that he reimburse the clients who were charged an unlawful cost, and that he stop advertising Hussin as his California attorney. Hussin claims Lemberg ignored these demands, and that she therefore lodged a complaint against Lemberg with the State Bar of California. Moreover, Lemberg's website boasts that it has represented "more than 15,000 individual consumers."[1] Given Lemberg's wide-ranging, aggressive targeting of consumers throughout the country, and especially in California, allegations of Lemberg's misconduct which rose to the level of Hussin complaining to the bar is clearly an issue public interest. Like the statements regarding the Plaintiff attorney's conduct in *Choyce*, all of the statements Hussin made regarding Lemberg are a matter of public interest. Prospective clients nationwide would have an interest in Hussin's statements and the statements made are directly related to this litigation. Construed broadly, Hussin's statements regarding Lemberg's misconduct, so egregious that she reported him to the state bar, is most certainly a matter of public interest.

### 3. Lemberg Cannot Show a Probability of Prevailing On Its Attempted Civil Extortion Counterclaim

Based on the above, the Court should hold Hussin has made a prima facie showing that all of the acts alleged in the attempted civil extortion counterclaim were taken in furtherance of her exercise of the constitutional right of petition or free speech in connection with this litigation and were statements relating to a public

---

[1] *See* http://www.lemberglaw.com/

9

issue or an issue of public interest. Assuming the Court finds Hussin made a prima facie showing, Lemberg now must establish that there is a probability he will prevail on the challenged claim. However, Lemberg has not, *nor can he*, meet that burden.

### a.  **Lemberg Fails to State a Claim for Attempted Civil Extortion**

Under California Penal Code § 518, "[e]xtortion is the obtaining of property from another, with his consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right." In *Flatley v. Mauro* (2006) 121 Cal.App.4th 1523, the California Supreme Court explained that the threat of criminal prosecution and to publish defamatory matters in order to induce payment of money is extortion under California law. In *Flatley v. Mauro*, the attorney of an alleged rape victim engaged in attempted extortion when he sent correspondence to the alleged perpetrator's attorney "warning that, if payment was not made, the information concerning the alleged rape would be turned over to state, local, and federal authorities for criminal prosecution. In *Mendoza v. Hamzeh* (2013) 215 Cal.App.4th 799, Hamzeh threatened to report Mendoza "to the California Attorney General, the Los Angeles District Attorney, the Internal Revenue Service regarding tax fraud, [and] the Better Business Bureau," and to disclose the alleged wrongdoing to Mendoza's customers and vendors if Mendoza did not pay "damages exceeding $75,000." *Id*. at 802. The court stated that a "threat to report a crime may in and of itself be legal. But when the threat to report a crime is coupled with a demand for money, the threat becomes illegal, regardless of whether the victim in fact owed the money demanded." *Id*. at 805.

Here, the alleged communications made by Hussin and relied upon in Lemberg's allegations of attempted extortion are readily distinguishable from the demand letters in *Flatley* and *Mendoza*. Here, none of the alleged communications made by Hussin contained a threat to report a crime *coupled with* a demand for money. While Hussin did in fact threaten Lemberg she would report him to the bar,

10

her threat had nothing whatsoever to with money. *See*, Declaration of Tammy Hussin Dec., paras 11 – 13. At the time Hussin threatened Lemberg, she had just discovered Lemberg had been misappropriating client settlement funds and was still advertising to and retaining Californians. *Id*. Hussin wanted nothing to do with Lemberg, and surely did not want Lemberg using her name and likeness to retain new Californians, who were destined to be harmed by Lemberg. *Id*. Hussin made several demand to Lemberg that he remove her name from his websites, but Lemberg continued to advertise Hussin as his California attorney on each of his websites. *Id*.  On June 6, 2014, Hussin sent Lemberg an email with a final warning, saying: "I have requested a number of times that you remove my name from your websites; however, as of today, you continue to misrepresent on each of your websites that I am your California office and your California attorney…You are directed to immediately cease and desist these continued misrepresentations. If my name is not removed from each of your websites by Monday, I will report you to the State Bar of California." *Id*. at para 12. Even after the stern warning, Lemberg continued to hold Hussin out as his California attorney on each of his websites. *Id*. So, Hussin made good on her threat, and reported Lemberg's misconduct to the State Bar of California. *Id*. at para. 13.

Hussin's threat was completely unrelated to any attempt to dissuade Lemberg from seeking damages against her, and Lemberg will be unable to demonstrate otherwise. Moreover, after Hussin filed the bar complaint, she *always* acknowledged to Lemberg that she owed him money and made frequent attempts to come to terms with Lemberg. *Id*. at para 14. In fact, just prior to the filing of Lemberg's Complaint, Hussin said to Lemberg in an email: "Neither one of us is denying we owe each other money." *Id*. at paragraph 15. Just before Lemberg filed this litigation, Hussin emailed Lemberg offering to do a binding arbitration with the losing side to pay the other's fees and costs. *Id*. It makes little sense how Hussin might have attempted to

1  extort Lemberg out of seeking damages, while she always acknowledged she owed

2  him money and even offered to do a binding arbitration.

3       Hussin alleges in her SACC that in May of 2015, Lemberg threatened to file

4  suit against Hussin after she asserted her entitlement in the Horton Class Action.

5  Hussin tried to dissuade Lemberg from filing in Federal Court, because of her

6  concerns Lemberg would be referred by a federal judge for discipline. Hussin Dec.,

7  at 16. Hussin told Lemberg in an email they should binding arbitration instead of

8  litigating in federal court, because an arbitrator would be far less likely to *sua sponte*

9  refer Lemberg to the bar. *Id*. Just before Lemberg filed suit, Hussin tried to convince

10  Lemberg a binding arbitration would be better than litigation. She wrote: "We will

11  be able to adjudicate the material breach issue, and an arbitrator is less likely to *sua*

12  *sponte* refer you to the State Bar and/or the Department of Justice. Your Privacystar

13  scam alone can get you disbarred, so it might be prudent of you to keep our dispute

14  far from a judge." *Id*. None of this amounts to attempted extortion. Although Hussin

15  did try to talk Lemberg out of filing in Federal Court, she *always* acknowledged she

16  owed Lemberg money, and never once made a threat to dissuade Lemberg from

17  seeking damages.

18       In addition, most of the allegations relied upon by Lemberg are irrelevant to a

19  claim for attempted extortion, and do not support a claim for relief. For example,

20  Lemberg alleges Hussin "purposely made the confidential allegations public" and

21  claims Hussin's allegation were "patently false and baseless." Lemberg also claims

22  Hussin "publicly disclosed the substance of the ethics complaint in her pleadings

23  and in other ways." Likewise, Lemberg alleges in his extortion claim that grievance

24  complaints and investigations are confidential unless and until there has been a

25  finding of probable cause." [2] None of this amounts to attempted extortion, and

26  _____

27  [2] While grievance complaints themselves might in and of themselves be confidential, the fact
    Hussin lodged a complaint to the state bar is not. Regardless, any doubt as to whether the

28  challenged statements relate to a matter of public interest must be resolved in favor of favoring

Lemberg's allegations are inflammatory and irrelevant.

Lemberg's Opposition to this Motion is certain to demonstrate he has zero likelihood of prevailing on this claim, and that his new counterclaims are nothing more than retaliation against Hussin for getting fired from the Horton Class Action. Hussin never used the threat of filing a bar complaint as a means to dissuade Lemberg from seeking damages, and she always acknowledged to Lemberg she owed him money and made many attempts to come to terms with Lemberg.

### b.   The California Litigation Privilege Precludes Liability for Hussin's Protected Speech and Petitioning Activity

Lemberg also cannot show "a reasonable probability he will prevail on the merits at trial," because Hussin's statements which Lemberg relies upon are privileged. The litigation privilege applies "to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson* (1990) 50 Cal.3d 205, 212. "'The privilege is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." [Citation.]' *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241. The litigation privilege is interpreted broadly in order to further its principal purpose of affording litigants and witnesses the utmost freedom of access to the courts without fear of harassment in derivative tort actions. *Ibid*. The privilege is absolute and applies regardless of malice. [Fn. omitted.] *Action Apartment*, *supra*, 41 Cal.4th at 1241.[3]

---

freedom of speech, because "the question whether something is an issue of public interest must be `construed broadly.'" Hecimovich v. Encinal Sch. Parent Teacher Org. (2012) 203 Cal.App.4th 450, 464, review denied (Apr. 25, 2012) (quoting Gilbert v. Sykes (2007) 147 Cal.App.4th 13, 23 (internal quotation marks omitted)).

[3] Notably, statements made in initiating and pursuing a State Bar administrative proceeding are also protected by the litigation privilege. *Lebbos v. State Bar* (1985) 165 Cal.App.3d 656, 668; *see*

Here, Lemberg bases the attempted civil extortion claim on Hussin's referencing the ethics complaint in Hussin's filed Counterclaim. However, Hussin's bases for lodging the ethics complaint are identical to the bases for Hussin's claims and defenses. Hussin's Affirmative Defenses and Counterclaims describe how Hussin discovered, *inter alia*, Lemberg had been stealing from clients and engaging in the unauthorized practice of law numerous breaches of duty to clients and violations of ethical rules which, which helps form the basis of her claim of material breach and of unclean hands. (Doc. 48; see also Doc. 89.) Thus, Hussin's statements made in this proceeding were those by a litigant to achieve the objects of the litigation. Certainly, Hussin's statements bear a close connection or logical relation to this action, and were therefor privileged.

Lemberg alleges in his attempted extortion that Hussin's "ethics complaint were patently false and baseless." However, the documents attached to Hussin's Declaration in support of this Motion unequivocally prove her allegations of impropriety are genuine and true. Hussin attached detail of unauthorized charges to client settlements, along with the Declaration of Brittany Dixon. Ms. Dixon describes her experience with Lemberg and her plight to force Lemberg to reimburse her for a $595 PrivacyStar Charge. *See*, Hussin Dec., Ex. A. Hussin also attaches Declarations from clients who were unaware of legal representation and had no knowledge they retained Lemberg Law to pursue legal action on their behalf. *Id*. Likewise, Hussin attaches to her Declaration six cases in which Lemberg misappropriated settlement funds. Hussin Dec., Ex. B. In addition, Hussin points to eighteen instances in which Lemberg engaged in the unauthorized practice of law, while depriving new California clients of additional recovery. Hussin Dec., Ex. C.

*also Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 362 ("statements that are made in quasi-judicial proceedings…are privileged to the same extent as statements made in the course of a judicial proceeding" and "many cases have held that the official proceeding privilege applies to a communication intended to prompt an administrative agency charged with enforcing the law to investigate or remedy a wrongdoing".)

14

1   All of the Declarations and documents attached to Hussin's Declaration are

2   more than sufficient to prove that Hussin did – *and does* – in fact have a reasonable

3   basis to make the claims of misconduct. Contrary to Lemberg's allegation, the

4   contents of Hussin's bar complaint are not patently false or baseless. Regardless,

5   even assuming *arguendo* Hussin's statements made to state bar and in this litigation

6   were false and baseless, the falsity does not support a claim for extortion.

7   Lemberg extortion claim uses quotes to show Hussin's alleged unlawful

8   purpose in filing the ethics complaint or Counterclaim. However, the only quotes are

9   drawn directly from documents Hussin filed in this litigation. (Doc. 153, p. 18, ¶ 8,

10   9.) Notably, none of the quotes from Hussin contain a threat to report a crime

11   coupled with a demand for money. Even if they did, the quotes would be protected

12   by the litigation privilege as they were made in the course of litigation. Thus, to the

13   extent that the first counterclaim in reply for civil extortion is predicated on

14   statements made to the state bar or in this litigation, they are absolutely protected by

15   the litigation privilege.

16   All in all, the only paragraph left standing after the privilege is the allegation

17   that Hussin "threatened to bring an ethics complaint against Plaintiff in order to

18   dissuade Plaintiff from seeking damages from Defendants." Lemberg counterclaim,

19   count one, para 3. Yet this allegation is vague and conclusory and Hussin is left

20   unable to defend herself. Lemberg has provided no facts whatsoever as to what the

21   threat was, when, or how it was made, leaving Hussin without a clue as to what

22   Lemberg is referring to.

23   The court must first discard conclusory allegations and then determine

24   whether the well-pleaded facts support a plausible inference of the underlying

25   misconduct alleged. *Iqbal, supra*. "[T]he mere possibility of misconduct" is

26   insufficient. *Id.*, at 1950. If the Court removes Lemberg's conclusory allegation that

27   Hussin attempted to "dissuade him from seeking damages," or to "dissuade Plaintiff

28

from seeking damages," Lemberg's attempted extortion claim cannot survive.

### 4. **Defendants Are Entitled to Mandatory Fees and Costs if They Prevail on the Anti-SLAPP Motion.**

"Any SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees." Cal. Civ. Proc. Code § 425.16(c); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001); *see also ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1018 (2001). Hussin paid legal fees to an attorney who assisted her in preparing this Motion and said fees are recoverable. *See*, *Mix v. Tumanjan Development Corp.* (2002) 102 Cal.App.4th 1318 , 126 Cal.Rptr.2d 267 ("We hold that an attorney representing himself or herself, who prevails in an action on a contract with an attorney fee provision, may recover reasonable attorney fees incurred for legal services of other attorneys who assist the pro se attorney in the prosecution or defense of the action, even if the assisting attorneys do not appear as attorneys of record in the action."). As such, in the event that the Court grants this motion, Hussin requests that the Court order Lemberg to pay Hussin's costs and fees.

### B. **Plaintiff's Additional Counterclaims in Reply Should Be Dismissed As They Are Permissive and Should Have Been Filed in an Amended Complaint**

Lemberg should not now be able to create a seemingly endless stream of claims by adding counterclaims in reply which have little to do with this litigation. Counterclaims in reply are generally disfavored, and the Ninth Circuit only permits counterclaims in reply if they are "compulsory." *Mattel, Inc v. MGA Entertainment, Inc.*, 705 F.3d 1008, 1110 (9th Cir. 2013); *Southeastern Indus. Tire Co., Inc. v. Duraprene Corp.*, 70 F.R.D. 585, 588 (E.D. Pa. 1976). According to the Ninth Circuit: "To be compulsory, a counterclaim must "arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). We apply "the logical relationship test for compulsory counterclaims."

*In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195-96 (9th Cir.2005) (internal quotation marks omitted). "A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant." *Id.* at 1196. "What matters is not the legal theory but the facts." *Id.* "[E]ven the most liberal construction of ['transaction'] cannot operate to make a counterclaim that arises out of an entirely different or independent transaction or occurrence compulsory under Rule 13(a)." *Id.* (citing 6 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 25 1410, at 52 (3d ed. 2010)). To the extent that the counterclaim is not compulsory pursuant to Rule 13(a), the claim is permissive, and Plaintiff would be required to seek leave to amend to add the claim in an amended complaint. *See Vieste, LLC v. Hill Redwood Dev.*, 2011 U.S. Dist. LEXIS 157915, 9-10 (N.D. Cal. Apr. 5, 2011

Here, Lemberg's counterclaims in reply do not rest on the same "aggregate core of facts" as Hussin's counterclaims. In Hussin's SACC, Hussin asserted counterclaims for Breach of Contract, Connecticut Unfair Trade Practices Act, Conversion, Statutory Theft, Quantum Meruit, and Unjust Enrichment. Lemberg's counterclaims in reply do not rest on same aggregate facts as Hussin's counterclaims. For example, Lemberg's claim for attempted civil extortion arises out of an entirely different or independent transaction or occurrence, and has nothing to do with the subject matter of Hussin's counterclaims. Likewise, Lemberg's claim for recoupment seeks damages for breach of contract or, in the alternative, all fees paid to Hussin "from 2013 to the present." (Doc 153, ¶ 19.) As Lemberg acknowledges fees were paid to Hussin beginning in 2013, and Lemberg did not file the Complaint until 2015, he should have brought this claim for "Recoupment" in the original complaint or sought leave to amend, rather than as a

1  counterclaim in reply. Lemberg's counterclaim in reply for Breach of Fiduciary

2  Duty also relates to events unconnected to Hussin's SACC, and are independent

3  transactions which do not rest on the same set of aggregate facts. The fourth and

4  fifth counterclaims in reply for Intentional Interference with Contractual Relations

5  and Intentional Interference with Prospective Economic Relations are permissive as

6  they do not arise out of Hussin's Counterclaims.

7        Insofar as none of Lemberg's counterclaims in reply rest on same aggregate

8  facts as Hussin's counterclaims, they are permissive and should be dismissed.

9       **C.**    **Lemberg's Second Claim for Recoupment is Vague and Fails to**

10  **State A Claim for Relief**

11        The second counterclaim alleges that "In the event that Defendants are

12  entitled to damages related to their breach of contract claim, Plaintiff is entitled to

13  recoupment of all payments made under said contract to Defendants in amounts

14  exceeding \$200,000." (Doc. 153, ¶ 18.) Lemberg also alleges, "In the event

15  Defendants succeed in showing that fee sharing arrangements between them and

16  Lemberg Law were illegal, Lemberg Law seeks to recoup all fee sharing payments

17  made to Defendants from 2013 to the present." This claim is vague and conclusory

18  and wholly unsupported by Connecticut law. First, Connecticut General Statutes

19  Sec. 42a-3-305, subd. (3), entitled "Defenses and claims in recoupment," provides

20  that: "A claim in recoupment of the obligor against the original payee of the

21  instrument if the claim arose from the transaction that gave rise to the instrument;

22  but the claim of the obligor may be asserted against a transferee of the instrument

23  *only to reduce the amount owing* on the instrument at the time the action is

24  brought." Connecticut General Statutes Sec. 42a-3-305, subd. (3) (emphasis added.)

25  Assuming that Lemberg is obligated to Hussin for any payments pursuant to some

26  instrument, a recoupment claim may only operative to reduce the amount still

27  owing, and not amounts already paid.

28

Second, Connecticut case law has established that even where a contract is clearly illegal, payments made thereunder cannot be recouped if they were made voluntarily. *Wolf's New Process Abrasive Wheel v. Resnik* (1950) 16 Conn. Super. Ct. 415; *Crittenden v. Royce* (1924) 100 Conn. 617,620; *Morris v. New Haven* (1906) 78 Conn. 673, 675. As Lemberg does not plead that payments to Hussin were involuntarily, he cannot avail itself of the recoupment remedies under Connecticut law. Therefore, Lemberg's claim for recoupment must fail.

### D.   The Third Counterclaim for Breach of Fiduciary Duty Fails to State A Claim for Relief As No Fiduciary Duty Exists Between the Parties

Under California law "[a] fiduciary relationship is created where a person reposes trust and confidence in another and the person in whom such confidence is reposed obtains control over the other person's affairs." *Lynch v. Cruttenden & Co.* (1993) 18 Cal.App.4th 802, 809. In *Rickel v. Schwinn Bicycle Co.* (1983) 144 Cal.App.3d 648, the Court of Appeal stated that fiduciary relationship is "founded upon the trust or confidence reposed by one person in the integrity and fidelity of another" and "precludes the idea of profit or advantage resulting from the dealings of the parties and the person in whom the confidence is reposed." *Id.* at 654. The Court stated, "California law is that parties to a contract, by that fact alone, have no fiduciary duties toward one another." *Id.*

Connecticut cases considering whether fiduciary duties existed in business relationships have turned on the presence of a special vulnerability. Id. at 1154. "The unique element that inheres a fiduciary duty to one party is an elevated risk that the other party could be taken advantage of — and usually unilaterally," which precludes the court from "unduly extending the scope of fiduciary obligations to all ordinary business relationships." *Id.* at 1155. In *Hiho Tower, Inc. v. Comtronics Inc.* (2000) 255 Conn. 20, the Supreme Court explained that "the cases in which this court has, as a matter of law, refused to recognize a fiduciary relationship, the

parties were either dealing at arm's length, thereby lacking a relationship of dominance and dependence, or the parties were not engaged in a relationship of special trust and confidence." *Id*. at 39. The *Hiho Tower* further held that "[s]uperior skill and knowledge alone do not create a fiduciary duty among parties involved in a business transaction." *Hiho Tower*, 255 Conn. 20. at 42. As in *Hiho* Lemberg and Hussin, who are both sophisticated attorneys with two different law firms, were parties to an arms length transaction. Lemberg failed to allege factual evidence of a "unique degree of trust and confidence between the parties" such that Hussin was Lemberg's fiduciary.

Importantly, Lemberg failed to allege anything more than conclusory statements regarding their supposed fiduciary relationship. Based on California and Connecticut law, the relationship between Lemberg and Hussin is not a fiduciary one. Lemberg's claims are predicated on a breach of contract, and he has failed allege the existence of a fiduciary duty. Under California law, no fiduciary duty existed among the parties because they were parties to a contract bargained for at arms' length. Moreover, Lemberg's relationship ended long ago. Although they may have at one point owed a fiduciary duty to one another, Lemberg alleges no fact sufficient to support a fiduciary duty.

And finally, to the extent Lemberg uses conclusory allegations as they pertain to Horton, Lemberg failed to sufficiently put Hussin on notice as to how she allegedly "advised and enticed" Horton. Likewise, Lemberg fails to identify how or why Hussin had a fiduciary duty to maintain a "Lemberg Escrow" account, and his conclusory statements must be dismissed.

///

///

///

E.     **The Fourth and Fifth Counterclaims for Intentional Interference with Contractual and Prospective Economic Relations Fail to State Claims for Relief**

Lemberg again uses a conclusory and cryptic statement that Hussin "advised and enticed" Horton to terminate their relationship, but provides no details as to when or how or in what manner Hussin carried out this scheme. Likewise, Lemberg alleges in his counterclaims in reply that "Plaintiff had "economic relations with several plaintiffs," but fails to identify which relationships Hussin interfered with or how she interfered. After taking Lemberg's conclusory statements out, Lemberg fails to state a claim under either cause of action. Lemberg has not adequately pleaded that Hussin's interference with the relationships between Lemberg and its existing or prospective clients was wrongful by some measure beyond the fact of the interference itself, such as through fraud, intimidation or malice.

The truth is Lemberg has no facts to support his allegations regarding Horton, nor will an amended pleading be of assist. Lemberg has been on a spiteful rampage ever since he was fired by Horton, and is now turning his vindictiveness back onto Hussin. Shortly after getting fired, Lemberg filed a motion to intervene on behalf of Kevin Krejci, who is also the plaintiff in a separate class action against Cavalry also in the Southern District of California, initiated in January of 2016. *Horton,* ECF Doc. No. 200; *see also Krejci v. Cavalry Portfolio Servs, LLC*, No. 3:16-cv-0211-JLS-WVG (S.D. Cal.). Lemberg then moved to withdraw two of Horton's declarations previously filed in the case, stating cryptically that "certain facts have come to light that cast significant doubt on the propriety of the declarations," and requesting leave to submit additional information under seal should the court require more information. *Id.* ECF Doc. No. 204. The court denied that application. *Id.* ECF Doc. No. 211.

Lemberg then attempted to depose Horton and issued a subpoena to obtain written communications between Horton and Hussin. Mr. Horton filed a Motion to

Quash in the Northern District of California, based in part on the fact that all communications between he and Hussin are privileged. *See*, *Lemberg v Hussin*, Case 3:16-mc-80066-JCS (N.D. Cal.) Document 19, June 13, 2016. The honorable Judge Spero granted the Motion and issued a Protective Order, "barring Lemberg Law from further attempts to obtain Horton's communications with Hussin through discovery." (Doc. 19, p. 11.) *Id*.

In granting Horton's motion, Judge Spero said: "Horton asserts that he maintained an attorney-client relationship with Hussin as to other matters after she withdrew from his case against Cavalry, continued to consult with her on the Cavalry case even after she withdrew, and sought her advice in selecting new counsel, all of which is consistent with Hussin's deposition testimony in the Connecticut case." *Id*. at p. 6. Spero went on to say: "According to Horton, he 'reasonably believed that all such communications with [Hussin] were confidential communications made within the scope of the attorney-client relationship,' and accordingly none of the documents or communications that Lemberg Law seeks are discoverable." *Id*. Then, Spero concluded: "There is no reason to believe, however, that Horton's answers would change the Court's privilege analysis as to his underlying communications with Hussin regarding the decision to change counsel. Who initiated a telephone call is not relevant to the question of privilege, and Horton has already stated in his declaration that he understood his conversations with Hussin regarding the class action to be privileged. *See* Horton Decl. ¶ 7."

Furthermore, the Court stated that "advice as to choice of counsel falls squarely within the scope of the attorney-client privilege." (Doc. 19, p. 10.) In the same Order, the Court also entered a "protective order barring Lemberg Law from further attempts to obtain Horton's communications with Hussin through discovery." (Doc. 19, p. 11.) Thus, even if there were evidence of Hussin's interference with the contract between Lemberg and Horton, Lemberg is incapable of conducting discovery into the

1   privileged communications necessary to prove this counterclaim because all of the

2   communication relating to Horton are privileged. Accordingly, the fourth

3   counterclaim should be dismissed without leave to amend.

4        The fourth and fifth counterclaims are also duplicative. Under the fifth

5   counterclaim Lemberg alleges that "Plaintiff had economic relations with several

6   plaintiffs in California regarding potential or actual litigation including Peter **[sic]**

7   Horton, the plaintiff in Horton v. Cavalry Portfolio Services, LLC, Docket No. 13-

8   cv-00307-JAH-WVG." (Doc. 153, ¶ 33.) However, Lemberg had already alleged in

9   the fourth counterclaim for Intentional Interference with Contractual Relations. To

10  the extent that the fifth counterclaim is predicated on alleged interference with the

11  *Horton* litigation, it is duplicative of the fourth counterclaim and should be

12  dismissed without leave to amend.

13                          **<u>CONCLUSION</u>**

14       Based on the foregoing, the Court should grant Defendants' Motions. The

15  statements made by Hussin were in furtherance of her free right to speak on matters

16  of public concern and were made during this litigation. Moreover, Lemberg cannot

17  possibly establish a probability that he will prevail on the merits. Most of the

18  allegations Lemberg relies upon are privileged, and the remaining allegations do not

19  support a claim for extortion. As such, Hussin respectfully requests that the Court

20  grant her special motion to strike Plaintiff's counterclaim in reply for attempted civil

21  extortion and to dismiss Lemberg's counterclaims in Reply.

22

23  DATED: November 7, 2016

24                          By:  /s/ *Tammy Hussin*
                                 _____
25                               Tammy Hussin
                                 In Pro Per and attorney for Law Office of
26                               Tammy Hussin, P.C.

27

28

1

## CERTIFICATE OF SERVICE

2

3      I am employed in the County of San Diego, State of California. I am over the

age of 18 and not a party to the within action; my business address is 1302 N. Coast

4      Highway 101, Suite 201, Encinitas, CA 92024.

5      On November 17, 2016, I served the following document:

6

7      *NOTICE OF AND  SPECIAL ANTI-SLAPP MOTION TO STRIKE
PLAINTIFF'S COUNTERCLAIM FOR ATTEMPTED CIVIL EXTORTION*

8      *AND TO DISMISS LEMBERG'S COUNTERCLAIMS IN REPLY.*

9      [xx]     By Electronic Filing and Service Pursuant to General Order 550: I

10     caused the document(s) listed above via the Court's Electronic Filing System which

constitutes service, pursuant to General Order 550 of the above-titled Court, upon the

11     counsel on service list.

12

13

| | |
|---|---|
| Craig S. Taschner, Esq.<br>Polivy & Taschner, LLC<br>Six Central Row<br>Second Floor<br>Hartford, Connecticut 06103<br>Phone: 860-560-1180<br>Fax: 860-560-1354 | ctaschner@aol.com |
| Jenny DeFrancisco, Esq.<br>LEMBERG LAW<br>43 Danbury Rd, Wilton, CT 06897<br>Phone: (203) 653-2250<br>Fax: (203) 653-3424 | jdefrancisco@lemberglaw.com |
| Peter M. Nolin, Esq.<br>CARMODY TORRANCE SANDAK,<br>HENNESSEY LLP<br>707 Summer Street – 3rd Floor<br>Stamford, CT 06901-1026<br>Tel: 203-425-4200<br>Fax: 203-325-8608 | pnolin@carmodylaw.com |
| Ryan W Scully, Esq.<br>CARMODY TORRANCE SANDAK,<br>HENNESSEY LLP<br>707 Summer Street – 3rd Floor<br>Stamford, CT 06901-1026<br>Tel: 203-425-4200<br>Fax: 203-325-8608 | rscully@carmodylaw.com,<br>scullyryan@hotmail.com |

| | |
|---|---|
| Andrew Servais, Esq.<br>WINGERT GREBING BRUBAKER &<br>JUSKIE LLP<br>One America Plaza, Suite 1200<br>600 West Broadway<br>San Diego, CA 92101<br>Tel: (619) 232-8151<br> Fax: (619) 232-4665 | aservais@wingertlaw.com<br>asimonson@wingertlaw.com<br>mtrendler@wingertlaw.com |

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_/s/ Cine Johnson_____
Cine Johnson